# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WENDELLA LAMBERT,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-116
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Wendella Lambert brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying her applications for disability insurance benefits (DIB) and

supplemental security income (SSI).    This matter is before the Court on plaintiff's Statement of

Errors (Doc. 12), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

memorandum (Doc. 20).

## I.  Procedural Background

Plaintiff originally filed applications for DIB and SSI in June 2011.    Plaintiff's

applications were denied at the initial and reconsideration levels.    After a hearing before

administrative law judge (ALJ) Peter Boylan, plaintiff's applications were again denied on May

2, 2013.    (Tr. 71-88).    The Appeals Council denied review on June 2014.    (Tr. 89-94).

Plaintiff filed subsequent applications for DIB and SSI in July 2014, alleging an amended

onset date of May 3, 2013, due to knee problems, Bipolar Disorder, anxiety, and ADHD.    After

denials at the initial and reconsideration levels, plaintiff was afforded a hearing before ALJ

Thuy-Anh T. Nguyen on January 10, 2017.    Plaintiff and a vocation expert (VE) appeared and

testified at the hearing.    On April 5, 2017, the ALJ issued a decision denying plaintiff's DIB

and SSI applications. (Tr. 9-25). Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.    The Administrative Law Judge's Findings**

In rendering her decision on plaintiff's subsequent DIB and SSI applications, ALJ Nguyen stated she was bound under principles of administrative *res judicata* by ALJ Boylan's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's residual functional capacity (RFC). (Tr. 13, citing AR 98-3(6), AR 98-4(6)). ALJ Nguyen found:

> [W]hile there [i]s no new or material evidence to show a worsening of the [plaintiff]'s condition, the medical evidence of record actually shows that the [plaintiff]'s condition improved and she is capable of performing the abilities set forth in the light exertional residual functional capacity as discussed herein. Furthermore, the [plaintiff]'s mental functional limitations and mental residual functional capacity have been adjusted in consideration of the regulation changes in the Listings of Impairments in 20 CFR, Part 404, Subpart P, Appendix 1.

(Tr. 13). The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

> 2. The [plaintiff] has not engaged in substantial gainful activity since May 3, 2013, the amended alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. Since May 3, 2013, the amended alleged onset date of disability, the [plaintiff] has had the following severe impairments: disorders of the bilateral knees with

3

history of knee replacement, asthma, affective disorder variably diagnosed as bipolar disorder, anxiety disorder, paranoid personality disorder, and delusional disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [plaintiff] could occasionally climb ramps [and] stairs, stoop, kneel, crouch, and crawl; however, the [plaintiff] should never climb ladders, ropes, or scaffolds. Further, [the plaintiff] must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation and avoid all exposure to work place hazards. The [plaintiff] is limited to performing work involving simple, routine, and repetitive tasks and simple work-related decisions. The [plaintiff] is unable to perform work involving production rate pace, as is generally associated with assembly line work. However, the [plaintiff] is able to perform goal-oriented work, as is generally associated with positions such as office cleaner. The [plaintiff] is also limited to occasional interaction with supervisors and coworkers and cannot interact with the public. Finally, the [plaintiff] is limited to tolerating occasional changes in a routine work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[1]Plaintiff had past relevant work as a laborer, a medium, unskilled position, and as a material handler, a heavy, semi-skilled position. (Tr. 23, 65).

4

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 3, 2013, the amended alleged onset date of disability, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as router, with 55,000 jobs nationally; marker, with 28,000 jobs nationally; and label coder, with 20,000 jobs nationally. (Tr. 24, 65).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ's finding of medical improvement is not supported by substantial evidence and violates the rule in *Drummond v. Comm'r of Social Security*, 126 F.3d 837 (6th Cir. 1997); (2) the ALJ erred in failing to give controlling or deferential weight to the opinions of plaintiff's treating psychiatrist, Dr. Whitaker, and treating physician, Chad Dunkle, M.D.; and (3) the ALJ erred in her assessment of the opinion from Kris Vitale, LPC, plaintiff's treating mental health therapist, in violation of Social Security Ruling 06-03p (2006). (Docs. 12 and 20).

### 1. ALJ Nguyen's finding of medical improvement such that plaintiff has an RFC for a range of light work is not supported by substantial evidence.

Plaintiff argues that ALJ Nguyen did not meet her burden of proving changed circumstances so as to avoid being bound by the principles of res judicata and ALJ Boylan's sedentary RFC finding in violation of *Drummond*. Plaintiff contends that while ALJ Nguyen stated there was evidence of medical improvement, she failed to cite any specific evidence

documenting medical improvement or explain how the current evidence of record reflected sufficient medical improvement to warrant an RFC for light work.[3]

In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. 126 F.3d at 842. *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). *Drummond* states that "[a]bsent evidence of improvement in a claimant's condition," the findings of an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings. 126 F.3d at 842. Under *Drummond*, the Commissioner bears the burden to prove changed circumstances so as to escape being bound by principles of res judicata. *Id.* at 843.

Following the decision in *Drummond*, the Commissioner issued an Acquiescence Ruling mandating that ALJs in Ohio (and other states within the Sixth Circuit) follow *Drummond* by applying res judicata to a prior assessment of a claimant's RFC. The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

---

[3] If plaintiff is limited to sedentary work, as ALJ Boylan determined, grid rules 201.09 and 201.10 direct a finding of disability on the date plaintiff turned 50 years old and became an individual "closely approaching advanced age." *See* 20 C.F.R., Part 404, Subpt. P, App. 2, §§ 201.09, 201.10.

As the Commissioner points out, the Sixth Circuit has recently clarified the scope of *Drummond* and the res judicata principles underlying that decision in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), which was issued after plaintiff filed her federal court appeal in this case. In *Earley*, the Sixth Circuit clarified that res judicata applies to subsequent applications covering "the same period of time [ ] rejected by the first application" but not to an application seeking benefits for a new period of time. *Id*. at 933. The doctrine of res judicata bars relitigation of the same claim but not litigation of a new claim: "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). This does not mean, however, that an ALJ "should completely ignore earlier findings and applications," or that principles of res judicata do not apply to subsequent administrative proceedings:

> What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

*Id.* (internal citations omitted). Thus, the principles of res judicata "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* However, the Sixth Circuit specifically rejected the Commissioner's suggestion that the findings of a previous ALJ are irrelevant to a subsequent disability application, noting that "[f]resh review is not blind review." *Id.* at 934.

In this case, ALJ Nguyen, who issue her decision before *Earley* was decided, noted that

8

the findings of a prior ALJ are binding under *Drummond* and AR 98-4(6) and AR 98-3(6).

Nevertheless, ALJ Nguyen found "that new evidence exists that is material and warrants a

departure from the residual functional capacity established in Judge Boylan's decision for the

period beginning May 3, 2013, the [plaintiff's] amended alleged onset date of disability." (Tr.

13). While ALJ Nguyen applied a pre-*Earley* understanding of *Drummond*, she nevertheless

gave a "fresh look" to plaintiff's application and therefore reviewed the evidence presented in

accordance with *Earley*. ALJ Nguyen considered post-May 13, 2013 evidence of plaintiff's

various physical and mental impairments in assessing plaintiff's RFC and conducted an

independent review of this new evidence. "Courts applying *Earley* to ALJ decisions issued

before that case have asked whether the ALJ, despite purporting to follow *Drummond*, gave the

new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand

was appropriate." *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-13126, 2018 WL 6440897, at

*15 (E.D. Mich. Oct. 22, 2018) (Report and Recommendation), *adopted*, 2018 WL 6434778

(E.D. Mich. Dec. 7, 2018) (collecting cases). Because ALJ Nguyen gave a "fresh look" to the

new evidence, a remand under *Earley* is not warranted, and the undersigned must conduct a

substantial evidence review of ALJ Nguyen's decision.

ALJ Nguyen determined that plaintiff's medical condition improved after ALJ Boylan's

May 2013, which found that plaintiff had an RFC for a limited range of sedentary work.

Sedentary work involves lifting no more than 10 pounds at a time, sitting for 6 hours of an 8-

hour workday, and standing or walking for no more than 2 hours of an 8-hour workday. Social

Security Ruling (SSR) 83-10. ALJ Nguyen determined that beginning on plaintiff's amended

alleged onset date of disability, the day after ALJ Boylan's decision, plaintiff was capable of a

range of light exertion work, which involves lifting up to 20 pounds at a time and walking or

standing for 6 hours of an 8-hour workday, with intermittent sitting during the remaining time. SSR 83-10. Thus the question for the Court is whether substantial evidence supports ALJ Nguyen's conclusion that plaintiff's medical condition has improved such that she has the RFC for walking and standing up to six hours of an eight-hour workday required for light work. The starting point for answering this question is with ALJ Boylan's decision. *Earley*, 893 F.3d at 933.

ALJ Boylan noted that the medical record documented plaintiff's history of knee problems and that plaintiff underwent bilateral knee replacement surgery in 2011. (Tr. 79). ALJ Boylan gave great weight to the opinions of the state agency physicians who opined that plaintiff could perform a limited range sedentary work because these limitations were consistent with the objective medical evidence. (Tr. 81). ALJ Boylan found plaintiff was not further limited, citing to records of a follow-up examination with plaintiff's surgeon that revealed plaintiff had a normal heal-toe gait, she moved about the room easily, and she displayed only mild tenderness on examination. (Tr. 79).

ALJ Nguyen, in contrast, determined that plaintiff had the RFC for light work because her medical condition had improved. To support her finding of medical improvement and her departure from ALJ Boylan's RFC for sedentary work, ALJ Nguyen cited to the findings of consultative examiner Phillip Swedberg, M.D., other examination findings of record, plaintiff's conservative and routine treatment history, and plaintiff's daily activities. None of this evidence substantially supports ALJ Nguyen's finding of medical improvement such that plaintiff was no longer limited to the sedentary RFC found by ALJ Boylan or was capable of performing the standing and walking requirements for light work activity.

First, ALJ Nguyen cited to the October 2014 one-time consultative examination of Phillip

10

Swedberg, M.D. (Tr. 505-12). At that exam, plaintiff reported she had undergone bilateral total knee replacement in November 2011. Plaintiff stated that eight months later she was told she needed a left knee revision apparently due to faulty hardware, but she refused additional surgery. On examination, Dr. Swedberg found plaintiff ambulated with an antalgic gait using a cane, and she did not want to ambulate in the office without the cane. (Tr. 509). Dr. Swedberg found no evidence of weakness or atrophy. Plaintiff's sensation was intact and her deep tendon reflexes were brisk. She was, however, unable to squat or walk heel-to-toe. (Tr. 510). Plaintiff's flexion of the knees was normal, and she had no crepitus, rotary instability, ligamentous laxity, or tenderness to palpation over the knee joints. Plaintiff displayed bony enlargement of both knees, left worse than right. Dr. Swedberg assessed left knee pain status post bilateral total knee replacement and exogenous obesity. Dr. Swedberg opined that plaintiff could perform a "mild to moderate" amount of ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects, but she was unable to squat. Dr. Swedberg also found that plaintiff had no difficulty sitting, reaching, or grasping and handling objects. Plaintiff had no visual, communication, or environmental limitations. (Tr. 511).

Dr. Swedberg's examination findings to do not substantially support ALJ Nguyen's finding of medical improvement. Dr. Swedberg opined that plaintiff "appears capable of a mild to moderate amount of ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects." (Tr. 511). At first glance, this would appear to indicate some improvement in plaintiff's functional abilities. However, ALJ Nguyen gave only "partial weight" to this opinion because it was "vague." (Tr. 21). It is not clear how according partial weight to Dr. Swedberg's "vague" findings supports a finding of medical improvement such that plaintiff would be able to perform the six hours of standing and walking per day required for light work.

In addition, Dr. Swedberg found that plaintiff ambulated with an antalgic gait using a cane (Tr. 509) and that plaintiff was unable to squat or walk heel-to-toe (Tr. 510). These findings indicate a worsening in plaintiff's condition from the time of ALJ Boylan's decision, when plaintiff exhibited a normal heal-toe gait, moved about the room easily, and displayed only mild tenderness. (Tr. 79). Dr. Swedberg's documented gait abnormalities do not substantially support ALJ Nguyen's finding of improvement.

Dr. Swedberg also documented some normal and benign findings during his October 2014 examination, including normal flexion of the knees and no crepitus, rotary instability, ligamentous laxity, or tenderness to palpation over the knee joints. (Tr. 511). To the extent ALJ Nguyen may have relied on these one-time, limited findings in concluding plaintiff's medical condition improved, that reliance was in error because the medical records from plaintiff's long-time treating physicians consistently show abnormal clinical signs that do not support a finding of medical improvement such that plaintiff could perform the standing and walking required for light work.

Plaintiff treated with Dr. Gary Ray, a physical medicine and rehabilitation specialist, on a monthly basis from May 9, 2013 through October 23, 2014. Dr. Ray assessed right and left knee pain secondary to osteoarthritis and failed total knee replacements, thoracic lumbar scoliosis, and possible arthritis of the spine. (Tr. 582). He prescribed Norco for her pain. (Tr. 582). When first seen, plaintiff ambulated with a mild to moderate stiff and left antalgic gait pattern. (Tr. 582, 576, 577, 578). Starting in October 2013, however, Dr. Ray reported on each visit that plaintiff ambulated with a moderate stiff and left antalgic gait pattern using a cane. (Tr. 568, 569, 570, 571, 572, 573, 574, 575). Dr. Ray also documented findings of swelling and

tenderness of the knees throughout the relevant time period. (Tr. 570-580).[4] He noted that while plaintiff initially exhibited mild crepitation with motion of the knees (Tr. 579, 580, 582), she later displayed moderate crepitation with motion of the knees. (Tr. 568, 569, 570, 571, 572, 573, 574, 575-577, 578). Dr. Ray's additional examination findings do not suggest an improvement in plaintiff's condition from the time of ALJ Boylan's RFC for sedentary work, including findings that plaintiff's deep tendon reflexes were zero at the ankles and she had decreased sensation at the left lateral ankle and foot area (Tr. 581); she displayed a mild decrease in sensation at the left lateral leg area, ankle and foot (Tr. 570, 571, 572, 573, 574, 575-579); and she exhibited deformities of the knees. (Tr. 571, 572, 573, 574). Dr. Chad Dunkle, another treating physician, reported in August 2015 that on physical examination of plaintiff, both knees evidenced marked crepitation with range of motion. (Tr. 655). In July 2016, Dr. Dunkle again noted crepitation with movement. (Tr. 669). ALJ Nguyen's reliance on the limited findings of the one-time consultative examining physician, to the exclusion of the other evidence of record, does not substantially support her finding of medical improvement.

ALJ Nguyen also stated that "many of [plaintiff's] physical examinations showed normal strength in the lower extremities without gait abnormalities on an ongoing basis (i.e., Exhibit B13F)." (Tr. 20, citing Tr. 650-670). The evidence cited by ALJ Nguyen does not support her conclusion of medical improvement. Exhibit B13F, cited by ALJ Nguyen, are progress notes from treating physician Chad H. Dunkle from February 25, 2015 through July 21, 2016. Contrary to ALJ Nguyen's representation, not one of these progress notes document normal lower extremity strength without gait abnormalities. Rather, Dr. Dunkle's records contain

---

[4] This is contrary to ALJ Nguyen's finding that there is no evidence of knee swelling in the physical examinations. (Tr. 19).

evidence suggesting a worsening of plaintiff's condition, including marked crepitation in both knees with range of motion. (Tr. 655, 669).

ALJ Nguyen also noted that plaintiff's treatment regimen had been conservative since her knee replacement. (Tr. 20). She noted that plaintiff has not required emergency treatment, inpatient hospitalizations, or further invasive treatment. Yet, there is nothing in ALJ Boylan's decision, which concluded plaintiff had an RFC for a limited range of sedentary work, to suggest plaintiff underwent aggressive or radical treatment for her knees after her bilateral knee replacement surgery in 2011. The ALJ also pointed to Dr. Dunkle's report on March 21, 2016, that plaintiff took 800 mg. of Ibuprofen, which the Court notes is a prescription dose, twice a day which "seems to overall keep her arthritic pain to a tolerable level." (Tr. 20, citing Tr. 664). But again, there is nothing in ALJ Boylan's decision to suggest plaintiff's symptoms were not under adequate control with her medication. Moreover, at plaintiff's next visit with Dr. Dunkle on July 21, 2016, he reported that plaintiff "continues to struggle with her knees" and the "results from [her] knee replacement [have] not been optimal. We will seek a second opinion." (Tr. 668). This does not suggest plaintiff's knee impairment improved to the point she was capable of performing the extended standing and walking involved in light work activity.[5]

Finally, ALJ Nguyen cited to plaintiff's "wide variety of activities of daily living" to justify her conclusion that plaintiff was now capable of more physically demanding work than at the time of ALJ Boylan's decision. ALJ Nguyen cited four additional activities that do not

---

[5] The Commissioner points to ALJ Nguyen's other findings regarding plaintiff's asthma and mental health symptoms to support her conclusion that plaintiff's treatment regimen had been conservative. (Doc. 19 at 8). However, whether plaintiff's asthma and mental health impairments were conservatively treated says nothing about whether plaintiff's knee condition improved to the point she was able to perform the standing and walking required for light work.

appear in ALJ Boylan's decision: plaintiff shops, performs puzzles, watches TV, and "takes her grandson to the park and plays/chases after him." (Compare Tr. 21 with Tr. 80). First, the ability to watch TV and do puzzles are not indicative of an ability to perform the six hours of standing and walking involved in light work. Second, while plaintiff goes shopping, she only shops once per month for about four hours; otherwise, her mother and friends do the shopping. (Tr. 282). This activity does not signal an improvement in plaintiff's physical capacity such that she can now perform light work. Third, ALJ Nguyen cites to plaintiff's activities with her grandson, as reported in plaintiff's mental health records, to support the ALJ's finding of improvement and thus an RFC for light work. However, it appears that these activities, when taken in the context of plaintiff's reports to her mental health providers, fail to support ALJ Nguyen's conclusion that plaintiff has greater physical capabilities than at the time of ALJ Boylan's decision. In a pharmacological management note, plaintiff was asked about things like sleep, concentration, appetite, memory, energy levels, and exercise. In response to a question about exercise, she reported "chasing after g-son." (Tr. 412). ALJ Nguyen appears to adopt the literal meaning of the term "chasing," implying an exertional activity involving running. In the context of the rest of the mental health notes, however, it is clear that plaintiff's activities are much more limited and ALJ Nguyen's interpretation is not reasonable. *See* Tr. 412—"Energy low/10 over past month, enough to care for [grand]son's needs and surface cleaning of the house"; Tr. 425—"Exercise: no, my legs bother me"; Interests: take g-don [grandson] to park"; Tr. 428—Interests: enjoys going to the park [with] my boy, as long as there are not a lot of people there, try to get g-son to color, radio"; Tr. 561—"Exercise: just moseying around the house"; Interests: plays with my g-son when he comes home from school. (He is teaching me how to read)"; Tr. 612—plaintiff "reports she sometimes goes to park with

15

grandson." Moreover, while plaintiff reported she took her grandson to the park, there is no evidence as to the frequency or duration of their visits, or whether plaintiff engaged in any physical activities with her grandson while at the park (as opposed to sitting on a bench and watching him play). The activities of daily living cited by ALJ Nguyen do not suggest that plaintiff's ability to stand and walk improved subsequent to ALJ Boylan's decision such that plaintiff could perform light work.

The reasons posited by ALJ Nguyen do not substantially support her finding of medical improvement subsequent to the time of ALJ Boylan's sedentary RFC finding. Nor do they substantially support the finding that plaintiff was capable of performing the standing and walking required for an RFC for light work. This case is remarkably similar to that of *Drummond*, in that the only thing that appears to have changed between plaintiff's two applications is her age, placing her in the "closely approaching advanced age" category at age 50, under which the grid rules would direct a finding of disability. *See* 20 C.F.R. part 404, subpart P, App. 2, Rule 201.14. Like plaintiff here, the 49-year-old claimant in *Drummond* was denied disability benefits on the basis she could perform sedentary work. 126 F.3d at 838. Upon reapplying for benefits after she had turned 50, however, the claimant was found capable of performing medium exertional work. *Id.* at 839. The Sixth Circuit determined that "substantial evidence was not introduced that Drummond's condition improved significantly between the two hearing dates." *Id.* at 843. "Nothing had changed between the end of the first application and the beginning of the second one—other than the advancement of one year in the applicant's age." *Earley*, 893 F.3d at 932 (discussing *Drummond*).

Similarly, ALJ Nguyen's RFC for light work is based on her finding that plaintiff's medical condition actually improved, which is not supported by substantial evidence for the

16

reasons discussed above.   While ALJ Nguyen was not "required" to adopt ALJ Boylan's

sedentary RFC finding, ALJ Boylan's decision informs the substantial evidence question and

provides a legitimate reference point for conducting the Court's substantial evidence review.

*Earley*, 893 F.3d at 933.   Plaintiff was limited to a reduced range of sedentary work at the time

of ALJ Boylan's decision.   The medical evidence in the instant record does not, contrary to ALJ

Nguyen's decision, substantially support a finding that plaintiff's ability to walk and stand

improved to the point she was now capable of light work.   It appears the only thing that

changed was plaintiff's age.   Plaintiff's first assignment of error should be sustained.

### 2.   ALJ Nguyen did not err in weighing the opinions of the treating physicians.

"Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'"   *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)).   *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   If the

ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the

factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what

weight to give the opinion.   *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.   These

factors include the length, nature and extent of the treatment relationship and the frequency of

examination.   20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.

In addition, the ALJ must consider the medical specialty of the source, how well-supported by

evidence the opinion is, how consistent the opinion is with the record as a whole, and other

factors which tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c) (3)-(6),

416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

17

Plaintiff contends ALJ Nguyen erred in failing to properly evaluate the opinions of treating psychiatrist Anthony Whitaker, M.D., and treating physician Chad Dunkle, M.D., by not using the two-step analysis for treating physician opinions set forth in *Gayheart*. Plaintiff alleges that the ALJ failed to acknowledge that Dr. Whitaker was plaintiff's treating psychiatrist who had a long-standing treating relationship with plaintiff, and while ALJ Nguyen acknowledged Dr. Dunkle was a treating physician, she nonetheless failed to analyze Dr. Dunkle's opinion in accordance with the Sixth Circuit's treating physician rule.

In July 2015, Dr. Whitaker opined that plaintiff "is not able to be gainfully employed due to problems she experienced with bipolar disorder and anxiety/social phobia/ agoraphobia. In addition, she needs a knee replacement procedure and has difficulty sitting still." (Tr. 588). The ALJ assigned this opinion little weight, noting that Dr. Whitaker's opinions were conclusory and not supported by the overall medical evidence of record, which reflected conservative treatment and benign findings on mental status examinations. (Tr. 22).

In August 2015, Dr. Dunkle opined that plaintiff was "currently unemployable" due to agoraphobia, panic disorder, chronic generalized anxiety, and severe osteoarthritis of both knees. (Tr. 590). Dr. Dunkle also opined that plaintiff requires a disability parking placard with an expiration date of "indefinite." (Tr. 589). ALJ Nguyen gave little weight to Dr. Dunkle's opinion because the determination of disability by another agency, such as the case for the disability parking placard, is not binding on the Social Security Administration, and the determination of disability is a finding reserved for the Commissioner. (Tr. 22).

The ALJ was not required to accept the opinions of Drs. Whittaker and Dunkle that plaintiff was "not able to be gainfully employed" or "unemployable." Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial

18

gainful activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Treating physicians' opinions on issues reserved to Commissioner are never entitled to controlling weight or special significance. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). The ALJ acted properly when she gave little weight to Drs. Whittaker and Dunkles' conclusory opinions that plaintiff was unemployable, and any error in failing to recognize Dr. Whittaker as a treating physician in this regard was harmless.

### 3. The Court need not reach plaintiff's third assignment of error.

Kris Vitale, LPC, plaintiff's mental health therapist, began treating plaintiff on September 1, 2016. (Tr. 689). After six counseling sessions, Ms. Vitale completed a Mental Impairment Questionnaire on plaintiff's behalf on December 9, 2016. (Tr. 689-94). Ms. Vitale opined that plaintiff had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace, and she assessed other limitations that indicated plaintiff would be unable to perform substantial gainful activity from a mental health standpoint. ALJ Nguyen gave Ms. Vitale's opinion only partial weight, finding Ms. Vitale was not an acceptable medical source under the Social Security regulations and that her opinion was inconsistent with and not supported by the substantial evidence of record. (Tr. 22-23). The Court need not reach this assignment of error because even if the ALJ erred in weighing the December 2016 opinion of Ms. Vitale, plaintiff is nevertheless entitled to disability benefits as of her 50th birthday in April 2016, which is prior to Ms. Vitale's treatment of plaintiff and her

opinion on plaintiff's functioning.

### III. This matter should be reversed for an award of benefits.

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley*, 820 F.2d at 782. The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here, the proof of disability is overwhelming and remand would serve no purpose other than delay. Grid rules 201.09 and 201.10 direct a finding of disability for an individual closely approaching advanced age who is limited to sedentary work. *See* 20 C.F.R., Part 404, Subpt. P, App. 2, §§ 201.09, 201.10. Plaintiff turned 50 years old in April 2016 and qualified as an individual closely approaching advanced age on her birthday. As she is limited to sedentary work, the proof of disability is strong and the evidence to the contrary is lacking in substance. Therefore, this matter should be reversed and remanded for an award of benefits as of plaintiff's 50th birthday.

20

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to

Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion for an award of benefits.


Date: _1/28/19_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WENDELLA LAMBERT,
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:18-cv-116
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).